IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNNY MONGHAM, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 12-00288-KD-B |
| | ) |
| TIM SORONEN, ZACK FLUKER, and | ) |
| TOMMY REESE, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This action is before the Court on the Motion for Summary Judgment (Doc. 11) filed by

Defendants Tim Soronen ("Soronen"), Zack Fluker ("Fluker"), and Tommy Reese ("Reese")

(collectively, "Defendants") pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  Upon

consideration, and for the reasons stated herein, the Court finds that Defendants' motion is due to

be **GRANTED in part** and that the remaining claims are due to be **REMANDED**.

### I.    Procedural History

On April 3, 2012, Plaintiff Johnny Mongham ("Mongham") filed a Complaint in the

Circuit Court of Marengo County, Alabama, alleging various civil rights violations under federal

and state law by Defendants, all of whom are officers with the City of Demopolis Police

Department.  (Doc. 1-1).  On April 27, 2012, Defendants removed the case to this Court.[2]  (Doc.

---

[1] The Plaintiff was given two extensions (Docs. 15 & 19) to give him time to file a
response.  No response has been filed, nor has a request for further extension.

[2] The Court has original jurisdiction over Mongham's federal claim pursuant to 28 U.S.C.
§ 1331.  Therefore, removal was proper pursuant to 28 U.S.C. § 1441(a).  The Court arguably
has supplemental jurisdiction over Mongham's state law claims pursuant to 28 U.S.C. § 1367(a).
In their Notice of Removal, Defendants cited 28 U.S.C. § 1443 as a basis for removal.  (Doc. 1 at
2, ¶ 9).  However, § 1443 is inapplicable in this case because 1) Mongham's federal claims do
(Continued)

1).  Removal was timely and otherwise properly executed pursuant to 28 U.S.C. § 1446.

On June 14, 2012, Mongham filed an Amended Complaint (Doc. 9) alleging the following causes of action:

- Count 1: unlawful seizure of his car by Soronen and Fluker without probable cause, in violation of Article 1, § 5 of the 1901 Constitution of Alabama, following Mongham's February 10, 2010 arrest for distribution of a controlled substance.

- Count 2: unlawful holding of his car by Soronen, Fluker, and Reese without due process in violation of Article 1, § 6 of the 1901 Constitution of Alabama, due to the failure to properly conduct forfeiture proceedings in state court pursuant to Ala. Code § 20-2-93 and § 28-4-286.

---

not involve issues of racial equality and 2) § 1443 does not apply to civil rights arising under state law.  See Provident Funding Assocs., LP v. Obande, 414 F. App'x 236, 238 (11th Cir. 2011) ("A removal petition filed under § 1443 must satisfy the two-prong test set out in Georgia v. Rachel, 384 U.S. 780, 792, 794, 86 S. Ct. 1783, 1790, 1791, 16 L. Ed. 2d 925 (1966). 'First, **the petitioner must show that the right upon which the petitioner relies arises under a federal law "providing for specific civil rights stated in terms of racial equality**." ' [Alabama v. ]Conley, 245 F.3d [1292,] 1295 [(11th Cir. 2001) ](quoting Rachel, 384 U.S. at 792, 86 S. Ct. at 1790). 'Second, the petitioner must show that he has been denied or cannot enforce that right in the state courts.' Id.  A defendant's reliance on broad constitutional or statutory provisions does not support removal under § 1443 when those provisions 'are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that section 1443 demands.' Rachel, 384 U.S. at 792, 86 S. Ct. at 1790 (holding that 'the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443')." (emphasis added)).

2

- Count 3: unlawful search of his person without probable cause due to the actions of Soronen and Fluker, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and actionable under 42 U.S.C. § 1983, during the August 5, 2011 search of Mongham's mother's premises pursuant to a search warrant.

Defendants denied liability on all claims.   (Doc. 10).   On November 14, 2012, Defendants filed the present motion, moving for summary judgment in their favor on all claims. The motion is now ripe for review.

## II.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56(c) governs procedures and provides as follows:

> **(1)** ***Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2)** ***Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3)** ***Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4)** ***Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment.   Lofton v. Sec'y of Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004).

Because Mongham failed to respond to the motion for summary judgment and consequently failed to identify any disputed facts in Defendants' brief or its suggested determinations of findings of fact, his "[f]ailure to do so will be considered an admission that no material factual dispute exists[.]"  S.D. Ala. L.R. 7.2(b).  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302–03 (11th Cir. 2009) (giving deference to interpretation of local rule of Northern District of Georgia which provides that if a "party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to Local Rule 56.1B(2), such fact is deemed admitted by the respondent."); Patton v. City of Hapeville, Ga., 162 F. App'x 895, 896 (11th Cir. 2006)[3] (unreported opinion) ("We conclude from the record, however, that the district court properly held that the defendants' statement of undisputed facts filed with their motion for summary judgment were admitted when

_____

[3] Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority. U.S. Ct. of App. 11th Cir. Rule 36-2.

4

Patton failed to respond to the statement of facts in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Northern District of Georgia.").

### III.   Facts[4]

#### a.   Seizure & Holding of Mongham's Car

On November 3, 2009, Defendant Fluker, a detective with the City of Demopolis Police Department (Defendant Reese is the Chief of Police (Doc. 11-1 at 5, Mongham Dep., p. 43)), conducted an undercover operation using a confidential informant, who had arranged a meeting to purchase crack cocaine from Plaintiff Mongham.   The informant was provided money and equipped with an audio and video recording device.    The informant met Mongham in the parking lot of a Demopolis hospital, where Mongham was sitting in his car, a 2001 Mercury Marquis.   The informant got into Mongham's car and purchased two off-white substances from Mongham.   After completing the transaction, the informant turned the substances over to Fluker. (Doc. 11-4, Incident/Offense Report dated 11/03/2009; Doc. 11-7, Informant's Written Statement).    The substances were then submitted to the Alabama Department of Forensic Sciences for analysis, which revealed the presence of 1.16 grams of cocaine base.   (Doc. 11-5, Evidence Submission Form; Doc. 11-6, Certificate of Analysis).

Mongham was indicted by a Marengo County Grand Jury on the charge of unlawful distribution of a controlled substance under Ala. Code § 13A-12-211 (1975), and a warrant for his arrest was issued on February 10, 2010.   (Doc. 11-3, Warrant of Arrest).   At approximately 3:50 p.m. that same day, Fluker and another police officer arrested Mongham pursuant to the

---

[4] The Court has made its determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [the Plaintiff,] the nonmoving party."  Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997).

warrant, under the supervision of Defendant Soronen, another detective with the Demopolis Police Department.   (Id.; Doc. 11-8, Arrest Report).    Mongham was held in custody for approximately 2-3 hours before posting bond.  (Doc. 11-1 at 3, p. 33).

Fluker seized Mongham's car following the arrest that same day pursuant to Ala. Code § 20-2-93 (1975), which allows for the seizure and forfeiture of certain property in connection with criminal activity.[5]  (Id. at 6, p. 45; Doc. 11-5, ¶ 2, Soronen Aff.).  Once all necessary bond, title and charge documentation was obtained, Fluker and Soronen drafted the necessary paperwork to turn Mongham's car over to the Marengo County District Attorney's Office so that a forfeiture proceeding could be filed.  The paperwork to release the vehicle was given to the District Attorney's Office sometime in February 2010.  (Doc. 11-5, ¶ 3).

On July 27, 2010, Soronen inquired with the District Attorney's Office on the status of the forfeiture proceeding, explaining that nothing had been done with Mongham's car.  Soronen was told that the paperwork he had submitted on the car had been misplaced or overlooked.  Soronen immediately resubmitted the paperwork for the release of the car and had the District Attorney's Office sign as having received the vehicle and release.  Soronen heard nothing further on the matter until learning that the forfeiture proceeding filed by the prosecutor had been dismissed.  (Id., ¶ 4; Doc. 11-2, Asset Confiscation Report).  However, by this time Mongham

---

[5] Section 20-2-93(h) states in part:  "Except as specifically provided to the contrary in this section, the procedures for the condemnation and forfeiture of property seized under this section shall be governed by and shall conform to the procedures set out in **Sections 28-4-286** through 28-4-290 . . ." (emphasis added).  Section 28-4-286 states, in relevant part: "It shall be the duty of such officer in the county or the Attorney General of the state to institute at once or cause to be instituted condemnation proceedings in the circuit court by filing a complaint in the name of the state against the property seized, describing the same, or against the person or persons in possession of said vehicles of transportation, if known, to obtain a judgment enforcing the forfeiture . . ."

had ceased making payments on the car, and it was repossessed by the lienholder.  (Doc. 11-1 at 3, pp. 35-36).

###### b.  Search of Mongham's Person

On August 1, 2011, Demopolis Police Narcotics Agent Cole Basinger ("Basinger") obtained a search warrant from a Demopolis municipal judge for a residence located on East Decatur Street in Demopolis, based on probable cause that illegal narcotics were being kept and sold there.  (Doc. 11-12 Application & Aff. for Search Warrant; Doc. 11-13, Search Warrant). Mongham's mother owned the residence.  (Doc. 11-1 at 4, pp. 37-38).  Mongham would stay there "probably about 15 times a year or so" and kept some extra clothes there, but his primary residence was in Uniontown. (Id. at 5, pp. 5-6, pp. 43-45).

On August 5, 2011, Basinger and other officers from the Demopolis police, along with members of the 17th Judicial Drug Task Force and the Marengo County Sheriff's Office, executed a search of the residence.  (Doc. 11-11 at 1-2, Incident/Offense Report dated 08/05/2011).  Mongham was present at the residence during the search, along with several family members and friends.  (Doc. 11-1 at 4, pp. 38-39).  Several people were detained during the search, with two black males being brought to the police department and questioned before being released, and several items were seized.  Fluker and Soronen assisted in the operation as backup. (Doc. 11-11 at 2-3; Doc. 11-15, ¶ 5).  Neither participated in the procurement of the search warrant or in the investigation leading up to the search.  (Doc. 11-15, ¶ 5).  No arrests were made during the search.  (Doc. 11-1 at 4, p. 40).  Mongham was outside the residence during the search and does not know what went on inside.  (Id. at 5, p. 41).  Soronen did not search Mongham while at the residence and was not present during any search of his person.  (Doc. 11-15, ¶ 6).

#### IV.    Analysis

##### a.  Count 3 - § 1983 Claim

Count Three of the Amended Complaint, the only count stating a claim under federal law,

alleges that Soronen and Fluker violated his right to be free of unreasonable search and seizure pursuant to the Fourth and Fourteenth Amendments.   Specifically, Mongham alleges that Soronen and Fluker obtained the search warrant for his mother's residence and that the search of the premises "result[ed] in a search of his person without probable cause resulting in nothing illegal being found on him."  (Doc. 9 at 4, ¶ 20).  The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[6]

The evidence presented indicates that neither Fluker nor Soronen searched Mongham during the search of his mother's house, and Mongham has failed to rebut this evidence. Soronen affirmatively states in his affidavit that he did not search Mongham and was not present during any search of Mongham.  (Doc. 11-15, ¶ 6).  Moreover, Mongham's own testimony indicates that he does not hold either Soronen or Fluker responsible for any search of his person:

> Q:    Other than taking your car or being there when your car was taken, has
>        Tim Soronen ever done you wrong?
>
> A:    No, sir.
>
> Q:    Other than taking your car, has Zack Fluker ever done you wrong?
>
> A:    No, sir.

(Doc. 11-1 at 6, p. 46).  Moreover, though Mongham alleged that Soronen and Fluker were

---

[6] "[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment."  Camara v. Mun. Court of City & County of San Francisco, 387 U.S. 523, 528 (1967).

responsible for obtaining the search warrant, Defendants' uncontested evidence indicates that Agent Basinger was the officer responsible for its issuance.  Soronen avers, and Mongham does not dispute, that neither he nor Fluker was involved in procuring the search warrant for Mongham's mother's residence, nor was either involved in the investigation leading to the procurement of that warrant.  (Doc. 11-15, ¶ 5).  The scope of their involvement in the search of the residence appears to be limited to assisting in the execution of the warrant, along with a number of other officers from various departments.  The warrant itself, issued by a municipal court judge, authorized the search of Mongham's mother's residence and "all persons on the premises."  (Doc. 11-13 at 1)

Even assuming that Fluker and/or Soronen illegally searched Mongham, or caused him to be illegally searched, the Court finds that there is no material dispute to the fact that the officers would be entitled to qualified immunity in relation to that search, as it was conducted pursuant to a facially valid warrant.  With regard to determining qualified immunity for alleged Fourth Amendment violations involving searches or seizures, the Supreme Court has recently held:

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " Ashcroft v. al-Kidd, 563 U.S. ——, ——, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (citation omitted).

> Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or,

9

as we have sometimes put it, in "objective good faith." <u>United States v. Leon</u>, 468 U.S. 897, 922–923, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

<u>Messerschmidt v. Millender</u>, 132 S. Ct. 1235, 1244-45 (2012).   Of course, this does not automatically end the Court's inquiry into the application of qualified immunity.  <u>Messerschmidt</u> further states:

> [U]nder our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception allowing suit when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." <u>Malley</u>, 475 U.S., at 341, 106 S. Ct. 1092 . . .
>
> Our precedents make clear, however, that the threshold for establishing this exception is a high one, and it should be. As we explained in <u>Leon</u>, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." <u>Id.</u>, at 921, 104 S. Ct. 3405; see also <u>Malley</u>, <u>supra</u>, at 346, n. 9, 106 S. Ct. 1092 ("It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable" (internal quotation marks and citation omitted)).

132 S. Ct. at 1245 (footnote omitted).  Regarding the standard for denying qualified immunity, the Eleventh Circuit has stated: "[A] plaintiff must show that when the defendant acted, the law was developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."  <u>Jones v. City of Dothan, Ala.</u>, 121 F.3d 1456, 1459 (11th Cir. 1997) (citations and quotations omitted).

The Fourth Circuit has held that "the inclusion of 'all persons' language in a warrant presents probable cause issues rather than particularity problems. 'A search warrant authorization

to search all persons found within a specifically described place is not lacking particularity in the sense that the executing officer will be unable readily to determine to whom the warrant applies.'" Owens ex rel. Owens v. Lott, 372 F.3d 267, 276 (4th Cir. 2004) (quoting 2 Wayne R. LaFave, Search and Seizure § 4.5(e), at 546-57 (3d ed.1996); also citing State v. De Simone, 288 A.2d 849, 850-51 (N.J. 1972) ("[W]ith regard to the Fourth Amendment demand for specificity as to the subject to be searched, there is none of the vice of a general warrant if the individual is ... identified by physical nexus to the ongoing criminal event itself.")). Several circuits have held that "all-person" warrants can be constitutional if supported by probable cause based on facts similar to those used to support the search warrant in this case. See United States v. Abbott, 574 F.3d 203, 212 (3d Cir. 2009), aff'd, 131 S. Ct. 18 (U.S. 2010) ("Consistent with Doe[ v. Groody, 361 F.3d 232, 239 (3d Cir. 2004)] and two of our sister courts of appeals, we now hold that a warrant may authorize the search of all persons present if there is probable cause to believe that a premises is dedicated to criminal activity. See Owens v. Lott, 372 F.3d 267, 276 (4th Cir. 2004) ('An "all persons" warrant can pass constitutional muster if the affidavit and information provided to the magistrate supply enough detailed information to establish probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity.'); cf. Marks v. Clarke, 102 F.3d 1012 (9th Cir. 1996) ('An all persons present warrant might be appropriate for a different kind of locale—one dedicated exclusively to criminal activity—for example, a building or apartment used as a crack house, a barn used as a methamphetamine lab, or a warehouse used exclusively as a storage place for arms.').

In adopting this view, Owens noted that the constitutionality of "all persons" warrants is far from settled law. See 372 F.3d at 274-75 ("Whether, and under what circumstances, an 'all persons' warrant is valid under the Fourth Amendment presents a novel question in this circuit. It

11

also remains unanswered in the Supreme Court, which acknowledged this issue in Ybarra[ v. Illinois]*, 444 U.S. [85,] 92 n.4, 100 S. Ct. 338[ (1979)], but left its resolution for another day . . . The minority view emerging []is that a premises search warrant that also authorizes the search of 'all persons' found on the premises being searched contravenes the particularity requirement of the Fourth Amendment and is invalid on its face . . . By contrast, a majority of the courts have rejected the idea that an 'all persons' warrant could never under any circumstances be constitutional." (collecting cases)).

There is nothing about the search warrant that would have facially indicated to either Soronen or Fluker, neither of whom was involved in procuring it or in the investigation leading to its issuance, that the warrant was unsupported by probable cause.  Nor is there any evidence to support a determination that a search of Mongham by Fluker or Soronen pursuant to the terms of the warrant was obviously unreasonable and a violation of federal law.  Therefore, the Court finds that summary judgment is due to be **GRANTED** to Soronen and Fluker as to Count 3 of the Amended Complaint.

### b.  Counts 1 & 2 – Alabama Constitutional Claims

In Counts 1 and 2 of the Amended Complaint, Mongham alleges that Defendants are liable for violations of his rights under Sections 5 and 6 of Article I of the 1901 Constitution of Alabama.  The Court does not have original jurisdiction over these claims and has determined that summary judgment is due to be granted to Defendants on Mongham's federal claim, the only claim over which the Court does have original jurisdiction.  To the extent that the Court has supplemental jurisdiction over the state law claims, the Court declines to exercise it.  See 28 U.S.C. § 1367(c)(3); Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[T]his Court has noted that 'if the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of state claims.' " (quoting L.A. Draper & Son v. Wheelabrator–Frye,

Inc., 735 F.2d 414, 428 (11th Cir. 1984) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)))).  As such, in accordance with 28 U.S.C. § 1447(c), Mongham's state law claims are due to be **REMANDED** to state court.

**V.     Conclusion**

In accordance with the foregoing analysis, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. 11) is **GRANTED** as to Plaintiff Mongham's federal claim, which is **DISMISSED with prejudice**.  It is further **ORDERED** that Mongham's state law claims are **REMANDED** to the Circuit Court of Marengo County, Alabama.  In accordance with 28 U.S.C. § 1447(c), the Clerk is **DIRECTED** to send a certified copy of this Order to the clerk of the Circuit Court of Marengo County.

Judgment in accordance with this Order shall issue by separate document.

**DONE** and **ORDERED** this the **26**[th] day of **February 2013**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**